# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

NIZAR MICHAEL YAICH,

      *Plaintiff*,

    v.

MARTY WALSH, *et al.*,

      *Defendants.*

Civil Action No. 21-669 (RDM)

---

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Nizar Michael Yaich, proceeding *pro se*, brings this civil action for discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against his former employer, the United States Department of Labor ("the Department") and Marty Walsh, the Secretary of Labor.[1]  Dkt. 1.  Now before the Court is the Department's partial motion to dismiss for failure to exhaust administrative remedies.  Dkt. 11.  For the reasons that follow, the Court will **GRANT** the Department's motion to dismiss as to paragraphs 28 and 29 of the complaint, will **GRANT** the Department's motion to dismiss Plaintiff's disparate treatment claims (but not his hostile work environment claim) set forth in paragraphs 1 through 16, and will otherwise **DENY** the Department's motion to dismiss.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the current Secretary of Labor, Marty Walsh, "is automatically substituted as a party" with no effect on Yaich's "substantial rights."  Fed. R. Civ. P. 25(d).

# I.  BACKGROUND

For purposes of evaluating Defendants' motion, the following allegations, which are taken from Plaintiff's complaint, are accepted as true.  *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

## A.      Factual Background

Yaich worked as an IT Specialist at the Bureau of Labor Statistics' Division of Information Technology and Network Management from September 8, 2015 to August 5, 2016, subject to a one-year probationary period.  Dkt. 1 at 5 (Compl. ¶¶ 1–2); *id.* at 9–10.  He alleges that, during his time at the Department, he was subjected to "hostile, disparate, discrimination" on the basis of his race (North African), sex (male), religion (Jewish), and national origin (Tunisia).  *Id.* at 4–5.  He further avers that he was subjected to retaliation after filing an informal complaint with the Department's Equal Employment Opportunity ("EEO") office.  *Id.* at 4–6.

Plaintiff alleges that when he was hired in September 2015 he was "given a temporary badge," while other employees received permanent badges under similar circumstances.  Dkt. 1 at 5 (Compl. ¶ 1).  He further contends that, throughout his employment with the agency, he "did not receive any training or career advancement opportunities," although "non-Tunisian and non-Middle Eastern" employees did.  *Id.* (Compl. ¶ 2).  Beginning in October 2015, Plaintiff began to experience allegedly hostile treatment by one particular co-worker ("CW1"), who later became the Acting Branch Chief.  *Id.* at 5–6 (Compl. ¶ 3–19).  According to the complaint, in October 2015, CW1 told Plaintiff, "there had been discrimination against African-Americans, but that times will change and 'non-African-Americans will learn the consequences of their actions.'"  *Id.* at 5 (Compl. ¶ 3).  The next month, when Plaintiff "announced his intention to give a coffee

mug to a new colleague whom he referred to as 'that new girl,' CW1 responded by yelling, 'You better not call her 'that girl' because she has black in her.'" *Id.* (Compl. ¶ 4).

This alleged discrimination continued throughout December 2015. *Id.* (Compl. ¶ 5–9). CW1 prevented Plaintiff from sitting at a table at a branch-wide meeting, stating that "we are all blacks at this table," *id.* (Compl. ¶ 5), and she purportedly told co-workers that Plaintiff was "a liar" *id.* (Compl. ¶ 9), and a "wash-out that just came from the street," *id.* (Compl. ¶ 6).  Plaintiff further alleges that "two African-American union stewards approached [him] outside of a bathroom and threatened him by saying, 'Whatever you see, hear, or witness that involves [CW1], you need to shut your mouth, close your eyes, and ears, and not report it, or else you are on probation and we will have you fired.'" *Id.* (Compl. ¶ 7).  Moreover, CW1 allegedly moved a menorah, which Plaintiff had brought to work to celebrate Hanukah, "to an out of the way window" where it "could not be seen." *Id.* (Compl. ¶ 8).

In January 2016, CW1 became Acting Branch Chief. *Id.* (Compl. ¶ 10).  Upon her promotion, CW1 required Plaintiff to provide her with his personal cell phone number, even though other employees were not required to do so. *Id.* (Compl. ¶ 10).  CW1 implied, also in January 2016, that Plaintiff had stolen her rolodex. *Id.* (Compl. ¶ 11).  Plaintiff also alleges that CW1 insulted his wife on at least two occasions in February 2016, calling her "a mail-order whore" in front of Plaintiff and his co-workers and exclaiming, upon learning that Yaich's wife received her green card, that we "[n]ot only . . . have to deal with terrorists who are already here" but also "now . . . have to import them." *Id.* (Compl. ¶ 12–13); *see also id.* at 6 (Compl. ¶ 27) (averring that "[a]gency employees [from] the same branch" in which he was working called his wife a "mail order bride" because of her Ukrainian origin, and called both Plaintiff and his wife "terrorist[s]" because of their immigrant status).  According to Plaintiff's complaint, CW1 also

belittled his efforts to obtain a master's degree in February, stating: "I do not know what some people think they are going to get by getting an education and spending all this money on a piece of paper, when someone's experience far outweigh[s] the efforts and job advancements some people think they will attain with that piece of paper." *Id.* at 5 (Compl. ¶ 14).

In March 2016, CW1 threatened to have Plaintiff fired, declaring that she could "get someone out of here faster than they can spin their wheels." *Id.* (Compl. ¶ 15). He further alleges, although without specifying the date of the incident, that CW1 pointed her finger at him and shouted, "You think you know everything! Well, you don't!" *Id.* (Compl. ¶ 16). In April 2016, CW1 allegedly interrupted Plaintiff's conversation with a co-worker, called him a "simpleton," and laughed at him. *Id.* (Compl. ¶ 17). She also allegedly accused Plaintiff of cutting her coat with a knife, *id.* (Compl. ¶ 18), and, when Plaintiff reminded her "that the office water was only for those who paid dues," she allegedly "push[ed] him, stating that someone had solen all the water under her desk and had been drinking the water that was reserved for members of the water club," *id.* at 5–6 (Compl. ¶ 19).

According to Plaintiff's complaint, unidentified "management officials" allegedly engaged in a series of retaliatory actions, starting on June 17, 2016, a mere thirty minutes after Plaintiff filed an informal complaint of discrimination. *Id.* at 6 (Compl. ¶ 20). On that day, management officials allegedly "suspended [Plaintiff's] access to the network, had his laptop taken away, and told him to report to work each day, sit in his office, and do no work." *Id.* at 6 (Compl. ¶ 20). That same day, the officials also began to investigate Plaintiff based on a false allegation that he threatened to sabotage the Department's network; a DHS investigation thereof later concluded that the allegation was "unfounded" and that its timing was "suspicious." *Id.* (Compl. ¶ 21). On July 1, 2016, a management official allegedly told Plaintiff that things "did

not look good" for him; that he would likely be fired soon; and that he should begin searching for a different job. *Id.* (Compl. ¶ 22). Plaintiff learned, later that month, that the entire IT team would move to a different floor, but he "would remain in his current location, in a room, by himself;" he also discovered on July 29 that another management official had "accused him of impermissibly entering her office suite." *Id.* (Compl. ¶ 23–24). On August 1, 2016, Plaintiff allegedly received a threatening note at his home, which "stated that if he did not drop his complaint, he would lose his family." *Id.* (Compl. ¶ 25).

Plaintiff was fired on August 5, 2016. *Id.* (Compl. ¶ 26). He contends that, on his last day, the Department "forbad[e]" him from taking his prescription medication in the office and "violated [his] HIPPA rights by going, sorting[,] and researching what [his] medication was for and who was the prescribing [doctor]." *Id.* (Compl. ¶ 29). Finally, he avers that the Department has taken possession of his property and has refused to return it to him. *Id.* (Compl. ¶ 28).

## B. Procedural History

Although the parties disagree on the exact date, it appears that Plaintiff initiated the administrative Equal Employment Opportunity ("EEO") process in either late May or early June 2016, when he first contacted the Bureau of Labor Statistics' Equal Employment Opportunity Office with his allegations of discrimination. Dkt. 13-1 at 6, 9 (indicating that Plaintiff "made charges of discrimination" on both May 23 and June 17, 2016); Dkt. 11-1 at 4 (stating that initial contact was made on June 10, 2016; *see also* Dkt. 1 at 6 (Compl. ¶ 21) (alleging that "management officials" retaliated against Plaintiff thirty "minutes after he filed an informal complaint of discrimination" on or about June 17, 2016). All agree, however, that Plaintiff filed a formal complaint with the Department of Labor's Civil Rights Center ("CRC") on

September 22, 2016, alleging that he was subject to retaliation, discrimination, and a hostile work environment on the basis of race, national origin, religion, and retaliation.  Dkt. 13-1 at 6.

The CRC accepted Plaintiff's claims for investigation on November 8, 2016 but dismissed a subset of the claims to the extent they alleged disparate treatment.  *See* Dkt. 11-1 at 1–4.  On January 11, 2019, the Department rendered a final decision dismissing Plaintiff's claims and concluding that Plaintiff "failed to establish that he was subjected to disparate treatment or a hostile [work] environment based on his race, national origin, religion, and/or in reprisal for prior EEO activity."  Dkt. 11-2 at 60.  Plaintiff appealed the Department's decision to the Equal Employment Opportunity Commission ("EEOC"), and the EEOC affirmed the agency's decision and concluded that Plaintiff's allegations, even if true, were insufficient to support a claim of discriminatory harassment or disparate treatment.  *See Rene M. v. Scalia*, EEOC Doc. 2019002876, 2020 WL 5822959, at *7–8 (Aug. 4, 2020).  Upon request for reconsideration, the EEOC affirmed its decision on December 9, 2020 and advised Plaintiff of his right to file a civil action within ninety days of receipt.  *See* Dkt. 1 at 9–11.

Plaintiff filed suit in this Court on March 9, 2021.  Dkt. 1.  His complaint asserts claims for retaliation and discrimination on the basis of race, sex, national origin, and religion under Title VII.  Although the complaint is not a picture of clarity, liberally construed, it asserts both disparate treatment and hostile work environment claims.  *Id.* at 5 ("Below is the list of acts of hostile, disparate, discrimination . . . .").  That reading of the complaint, moreover, is supported by the EEOC's decision on reconsideration, which is attached to Plaintiff's complaint.  *Id.* at 9– 11.  As explained in that decision, Plaintiff's EEO complaint asserted claims for both "discrimination and a hostile work environment based on race, national origin, religion, and in reprisal for prior EEO activity," *id*. at 10, and, although now proceeding *pro se*, it appears that

6

Plaintiff seeks to press the same claims that his counsel unsuccessfully pursued in the administrative process, *id.* at 6.

On October 25, 2021, Defendants filed a partial motion to dismiss, arguing that Plaintiff failed properly to exhaust the claims in paragraphs 1 through 19 and 27 through 29 of his complaint. Dkt. 11 at 1. In response, Plaintiff conceded that his claim in paragraph 29—which addressed his ability to take his medication with him upon his termination—was "not previously raised," and he has thus voluntarily withdrawn that claim. Dkt. 13 at 15. In all other respects, however, Plaintiff opposes Defendants' motion.

## II.  LEGAL STANDARD

At least at times, an agency may raise a plaintiff's failure to exhaust his administrative remedies under Federal Rule of Civil Procedure 12(b)(6). *See Green v. Haaland*, No. 21-cv-329, 2022 WL 898864 (D.D.C. Mar. 28, 2022). But, as Defendants acknowledge, Dkt. 15 at 2 n.3, failure to exhaust under Title VII is an affirmative defense, rather than a jurisdictional prerequisite to suit, and Defendants therefore bear the burden of proof, *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citing *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985)); *see Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 174 (D.D.C. 2016) (collecting cases). More importantly for present purposes, as with other affirmative defenses, a defendant may seek dismissal under Rule 12(b)(6) only if "the facts that give rise to the [exhaustion] defense are clear from the face of the complaint," from documents that are attached to or incorporated into the complaint, or from matters of which the court may take judicial notice. *Bajaj v. U.S. Dep't of Hous. & Urb. Dev.*, No. 21-cv-1149, 2022 WL 612598, at *4 (D.D.C. Mar. 2, 2022) (quoting *Kennedy v. Berkel & Co. Contractors, Inc.*, 319 F. Supp. 3d 236, 245 n.1 (D.D.C. 2018)); *see also Vasser v. McDonald*, 228 F. Supp. 3d 1, 9–10 (D.D.C. 2016). In the context of exhaustion,

this means that the Court should grant a motion to dismiss only if the plaintiff's failure to exhaust is plain from the allegations of the complaint or the undisputed records of the administrative proceeding that are attached to or referred to in the complaint or that are subject to judicial notice. *See Vasser*, 228 F. Supp. 3d at 9–10 (collecting cases).

### III.  ANALYSIS

"Before bringing Title VII . . . claims to court, federal employees must administratively exhaust their claims." *Coleman v. Duke*, 867 F.3d 204, 206 (D.C. Cir. 2017) (collecting cases). "Regulations prescribe in detail the administrative procedures available" to federal employees, and the availability of judicial review "hinges . . . on prior resort to the agency whose employment practice is challenged." *Kizas v. Webster*, 707 F.2d 524, 544 (D.C. Cir. 1983) (footnote omitted).  As relevant here, employees of a federal agency "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information . . . must initiate contact" with the agency's EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1); *see also Green v. Brennan*, 578 U.S. 547, 553 (2016).  If the informal counseling process does not satisfactorily resolve the employee's concern, the counselor must provide the employee with written notice of her right to file an administrative discrimination complaint with the agency.  29 C.F.R. § 1614.105(d).  The employee then has fifteen days to file a formal complaint with the agency.  *Id.* § 1614.106(b).  That complaint must "identify the aggrieved individual and the agency and . . . describe generally the action(s) or practice(s) that form the basis of the complaint."  *Id.* § 1614.106(c).

Defendants contend that two groups of Plaintiff's claims must be dismissed for failure to satisfy the exhaustion requirements set forth in 29 C.F.R. § 1614.  First, Defendants argue that Plaintiff failed to contact an EEO counselor within forty-five days of any of the events alleged in the first nineteen paragraphs of his complaint.  Dkt. 11 at 4; *see also* Dkt. 15 at 2 n.1.  Second, they contend that Plaintiff raised the claims described in paragraphs 27, 28, and 29 of his complaint for the first time before this Court, without ever raising those allegations in the administrative process.  Dkt. 11 at 11–12.  With the exception of the allegations raised in paragraph 29 of his complaint, which Plaintiff concedes should be dismissed for failure to exhaust, Plaintiff disputes each of Defendants' arguments.

## A.      Timely Exhaustion of Paragraphs 1 Through 19

As a general matter, the regulatory scheme "bar[s] discrimination claims that an employee does not first bring to the attention of an agency's EEO counselor within forty-five days of the alleged conduct."  *Vickers v. Powell*, 493 F.3d 186, 198 (D.C. Cir. 2007).  In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), however, the Supreme Court recognized that different rules apply in assessing the timeliness of claims challenging "discrete discriminatory and retaliatory acts," *id.* at 104, and claims that assert a hostile work environment, *id.* at 115.  With respect to the first category, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."  *Id.* at 113.  But to the extent that a plaintiff alleges a claim on the basis of a hostile work environment, such a claim "is composed of a series of separate acts," *id.* at 117, that can occur "over a series of days or perhaps years," *id.* at 115, and that "collectively constitute one 'unlawful employment practice,'" *id.* at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)).  For such

claims, "[i]t does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period." *Id.* "Provided that an act contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.*[2]

In responding to Defendants' motion, Plaintiff focuses exclusively on the second category—that is, a series of separate acts that constitute a single, ongoing unlawful employment practice in the form of a hostile work environment. In framing his response in this manner, Plaintiff leaves unanswered Defendants' contention that many of the discrete acts alleged the complaint occurred outside the forty-five-day window and, accordingly, cannot provide the basis for recovery on a disparate treatment theory. As a result, the Court must dismiss those discrete claims that are based on events that occurred more than forty-five days before Plaintiff initiated contact with the EEO officer.

A factual dispute exists, however, about the date of Plaintiff's first EEO contact. Referencing the date set forth in the Department's investigation letter, Dkt. 11-1 at 4, and in the final agency decision, Dkt. 11-2 at 1, Defendants contend that Plaintiff first contacted an EEO counselor on June 10, 2016 and that, accordingly, any acts of discrimination that occurred prior to April 26, 2016 are barred by a failure to timely exhaust, Dkt. 11 at 10. Plaintiff's formal EEO complaint, in contrast, states that he first "made an anti-harassment discrimination complaint to the Bureau of Labor Statistics Equal Employment Opportunity Office" on May 23, 2016. *See* Dkt. 13-1 at 9. To be sure, Plaintiff's complaint in this action does not reference the May 23

---

[2] Although *Morgan* dealt with the requirement that an employee bring an EEOC charge within 180 or 300 days of the alleged unlawful employment action, the same principles apply to the exhaustion of other administrative remedies. *See Panarello v. Zinke*, 254 F. Supp. 3d 85, 101 (D.D.C. 2017), *aff'd sub nom. Panarello v. Bernhardt*, 788 F. App'x 18 (D.C. Cir. 2019).

date, mentioning only a June 17, 2016 report that allegedly triggered a retaliatory investigation by management officials.  Dkt. 1 at 6 (Compl. ¶¶ 20–21).  But because "[f]ailure to exhaust administrative remedies is an affirmative defense" and because Defendants must "meet their burden of pleading and proving a failure to exhaust at the motion-to-dismiss stage by using the pleadings and *undisputed* documents in the record," *Sierra v. Hayden*, 254 F. Supp. 3d 230, 236 (D.D.C. 2017) (emphasis added), the Court must, at this early stage of the proceeding, assume that Plaintiff first contacted the agency's EEO officer on May 23, 2016.  *Cf. Fields v. Vilsack*, 207 F. Supp. 3d 80, 87-88 (D.D.C. 2016) (concluding that the agency could not prevail on its exhaustion defense where the plaintiff alleged timely initiation of EEO counseling).

Any acts of alleged discrimination that occurred after April 8, 2016 thus fall within the relevant forty-five-day window.  In his complaint, Plaintiff avers that at least three events encompassed in his hostile work environment and disparate treatment claims took place in "April 2016," without specifying the exact date.  Dkt. 1 at 5 (Compl. ¶¶ 17–19); see also Dkt. 11-2 at 19 (Final Agency Decision) (describing the claims in paragraphs 17 through 19 as occurring in "April 2016").  And although Defendants argue in their reply that the claims "based on paragraph[s] 1 to 19" each occurred before April 8, 2016, Dkt. 15 at 7, they point to nothing in the four corners of the complaint—or otherwise properly before the Court at this stage of the proceeding—to support that contention as to paragraphs 17 through 19.

Accordingly, accepting the allegations of the complaint as true, and drawing all reasonable inferences in Plaintiff's favor for purposes of Defendants' motion to dismiss, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Court will grant Defendants' motion to dismiss Plaintiff's discrete disparate treatment claims set forth in paragraphs 1–16 of the complaint for

failure to exhaust, but will deny Defendants' motion with respect to any discrete claims set forth in paragraphs 17–19.

This, then, brings the Court to Plaintiff's hostile work environment claim, to the extent that claim is set forth in paragraphs 1–19. Defendants, for their part, do not dispute that Plaintiff has alleged a hostile work environment claim or that, under *Morgan*, Plaintiff is entitled to rely on at least certain hostile acts that occurred more than forty-five days before Plaintiff first contacted the EEO office. Defendants, instead, argue that each of the allegations Plaintiff presents in paragraphs 1 through 19 of the complaint are "untimely" and that they are "separate and distinct" from the "'timely' raised allegations" in paragraphs 20 through 26. Dkt. 15 at 5. Specifically, Defendants contend that neither the denial of a permanent badge and training opportunities, alleged in paragraphs 1 and 2, nor the incidents of harassment by CW1 and other coworkers, alleged in paragraphs 3 to 19, are "sufficiently linked to the 'timely' allegations" of retaliation and termination in paragraphs 20 to 26. *Id.* at 6.

For the reasons explained above, the Court cannot accept Defendants' contention that the events alleged in paragraphs 17–19 occurred more than forty-five days before Plaintiff first contacted the agency's EEO officer. Defendants may eventually prove that they are correct, but at this stage of the proceeding, the Court cannot make that evidentiary jump. As a result, the question before the Court is whether the incidents alleged in paragraphs 1–16 are sufficiently linked to the events alleged in paragraphs 17–26 to constitute "part[s] of the same actionable hostile environment practice," *Morgan*, 536 U.S. at 120; *see also Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011) (same). To answer that question, the Court must consider whether, for example, the separate events "involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Morgan*, 536 U.S. at 120

(alteration in original) (quoting *Morgan v. Nat'l R.R. Passenger Corp.*, 232 F.3d 1008, 1017 (9th Cir. 2000)).

Again drawing all reasonable inferences in Plaintiff's favor at this stage of the proceeding, *Iqbal*, 556 U.S. at 678, the Court concludes that Defendants have failed to carry their burden of demonstrating that any portion of Plaintiff's hostile work environment claim should be dismissed for failure to timely exhaust.  To start, the allegations contained in paragraphs 17, 18, and 19 bear a close relationship with the alleged harassment Plaintiff describes in paragraphs 3 through 16.  Those incidents all "involve[d] the same type of employment actions" (day-to-day insults, slights, and baseless accusations); they "occurred relatively frequently" (seventeen alleged incidents over the course of eight months); and they were largely "perpetrated by the same manager[]" (CW1).  *Morgan*, 536 U.S. at 120 (first alteration in original) (quoting *Morgan*, 232 F.3d at 1017); *see also Baird*, 662 F.3d at 1251; Dkt. 1 at 5 (Compl. ¶¶ 3–19).  Even the incident described in paragraph 7, which involved an alleged threat by two union stewards that Yaich would be "fired" if he reported CW1, Dkt. 1 at 5 (Compl. ¶ 7), bears on the nature of CW1's alleged harassment and permits a reasonable inference that CW1 played a role in the incident.  The Court, accordingly, concludes that paragraphs 3 through 16 are adequately pled as part of the same hostile work environment claim as those events alleged in paragraphs 17 through 19 (as well as other timely-raised claims).  *See Baird*, 662 F.3d at 1251; *see also* Dkt. 1 at 6 (Compl. ¶¶ 20–26).

There is perhaps a closer question as to whether the allegations Plaintiff presents in paragraphs 1 and 2, which raise Yaich's denial of a permanent badge and training opportunities, are related to his timely raised claims.  *See* Dkt. 1 at 5 (Compl. ¶¶ 1–2).  At least at times, the question of whether specific incidents are "adequately linked into a coherent hostile environment

claim" is not easily answered, *see Panarello v. Zinke*, 254 F. Supp. 3d 85, 101 (D.D.C. 2017), *aff'd sub nom. Panarello v. Bernhardt*, 788 F. App'x 18 (D.C. Cir. 2019) (quoting *Baird*, 662 F.3d at 1251), and this is such a case.  On the one hand, Plaintiff does not allege that the acts identified in paragraphs 1 and 2 were perpetrated by the same individual who allegedly perpetrated the acts identified in paragraphs 3 through 19, and those allegations do not recount the same type of facially degrading remarks described in paragraphs 3 through 19.  But, on the other hand, the allegations in paragraphs 1 and 2 appear to share common themes of mistrust, singling-out, and denial of career advancement with events alleged in the remaining paragraphs of the complaint.  *See, e.g.*, Dkt 1 at 5, 6 (Compl. ¶¶ 17–19, 21, 23–24); *see also Panarello*, 254 F. Supp. 3d at 101 (describing the "common themes" of denying the plaintiff "opportunities to advance her career").

Because the benefit of the doubt goes to the Plaintiff at the motion to dismiss stage, and because the nature of a hostile work environment can evolve over time—starting with less obvious abuse that gradually becomes more overt—the Court is not prepared to conclude at this early stage of the proceeding that the events alleged in paragraphs 1 and 2, even if "perpetrated by different managers," are insufficiently related to "comprise a coherent hostile work environment claim."  *Mason v. Geithner*, 811 F. Supp. 2d 128 (D.D.C. 2011), *aff'd*, 492 F. App'x 122 (D.C. Cir. 2012).  *See, e.g.*, *Vickers*, 493 F.3d at 199 (reversing summary judgment on the grounds that a supervisor's creation of a hostile environment through sexual conduct and a successor's condoning of such conduct could constitute part of the same hostile work environment claim for purposes of exhaustion); *Panarello*, 254 F. Supp. 3d at 101 (suggesting that events over the course of two years, involving different decisionmakers, with a common theme of retaliatory denial of career advancement, would satisfy the *Morgan* test); *Laughlin v.*

14

*Holder*, 923 F. Supp. 2d 204, 218–19 (D.D.C. 2013) (deciding that a series of promotion, personnel, and performance evaluation decisions by a core group of decisionmakers, designed to make the plaintiff's job more difficult, satisfied the *Morgan* standard for purposes of a Rule 12(b)(6) motion).  Rather, "the relationships, if any, among these acts and the reasons behind them are matters best left for discovery." *Laughlin*, 923 F. Supp. 2d at 219.

The Court will, accordingly, deny Defendants' partial motion to dismiss Plaintiff's hostile work environment claim with respect to paragraphs 1 through 19 of the complaint (or, for that matter, with respect to any other paragraphs of the complaint) for failure to exhaust.

**B.      Exhaustion of Allegations in Paragraphs 27 Through 29**

Defendants also argue that paragraphs 27, 28, and 29 of the complaint should be dismissed because Plaintiff raised them for the first time before this Court, without having addressed them in his EEO complaints.  Dkt. 11 at 12; Dkt. 15 at 8.  In response, Plaintiff concedes that the allegation raised in paragraph 29—about an alleged HIPPA violation—is unexhausted and should be dismissed.  Dkt. 13 at 14–15.  The Court agrees and will dismiss that claim for failure to exhaust.  The Court will, accordingly, limit its discussion to paragraphs 27 and 28.

"A Title VII plaintiff is required to exhaust his or her administrative remedies with respect to each discrete allegedly discriminatory or retaliatory act." *Wada v. Tomlinson*, 517 F. Supp. 2d 148, 183 (D.D.C. 2007) (citing *Morgan*, 536 U.S. at 122), *aff'd* 296 F. App'x 77 (D.C. Cir. 2008); *see also Perry v. Clinton*, 831 F. Supp. 2d 1, 15 (D.D.C. 2011) (prohibiting plaintiff from "adding clearly unexhausted retaliation claims to her complaint in this Court").  But as the D.C. Circuit has explained, "[n]aturally every detail of the eventual complaint need not be presaged in the EEO[] filing." *Crawford v. Duke*, 867 F.3d 103, 109 (D.C. Cir. 2017) (second

alteration in original) (quoting *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997). "Rather, the central question is whether the employee's [EEO] complaint contained 'sufficient information' to put the agency on notice of the claim and to 'enable the agency to investigate' it." *Id.* (quoting *Artis v. Bernanke*, 630 F.3d 1031, 1034 (D.C. Cir. 2011)).

Paragraph 27 alleges that "[a]gency employees [from] the same branch [where Plaintiff] was working . . . called [his] wife a 'mail order bride' for being from Ukraine, and called [them] both terrorist[s] for being legal immigrants [or] naturalized in the United States." Dkt. 1 at 6 (Compl. ¶ 27). This particular claim, unlike those set forth in paragraphs 1 through 26 of the complaint, is not mirrored in a similarly numbered paragraph in Plaintiff's formal EEO complaint. *See* Dkt. 13-1 at 6–11. The Court nonetheless concludes that Plaintiff's EEO complaint adequately put the Department on notice as to the allegations in paragraph 27, which raises substantially similar facts to those presented in paragraphs 13 and 14 of his EEO complaint. *Compare* Dkt. 1 at 6 (Compl. ¶ 27), *with* Dkt. 13-1 at 8. The sole distinction is that the relevant paragraphs in Plaintiff's EEO complaint say only that CW1 called Plaintiff's wife "a mail order whore" and labeled them both as "terrorists," Dkt. 13-1 at 8, while paragraph 27 alleges that "[a]gency employees"—in the plural—did so, Dkt. 1 at 6 (Compl. ¶ 27).

Drawing on this modest difference, Defendants contend that paragraph 27 of the complaint is an entirely "new allegation." Dkt. 15 at 8. The Court is unconvinced. To start, it is unclear whether paragraph 27 of Plaintiff's complaint refers to different events than those described in paragraphs 13 and 14 of his EEO complaint. But, in any event, it seems utterly improbable that the events, if they in fact occurred, were unrelated. Under the Department's theory, Plaintiff contends that CW1 called Plaintiff and his wife terrorists and, in "February 2016 and *several times* since then," referred to Plaintiff's wife as "a mail order whore," Dkt. 13-1 at 8

16

(EEO Compl. ¶¶ 13–14) (emphasis added), while also contending that certain unidentified "[a]gency employees"—independently—called Plaintiff and his wife terrorists and called his wife a "mail order bride," Dkt 1 at 6 (Compl. ¶ 27).  The far safer assumption is that Plaintiff is referring to CW1 in paragraph 27 of his complaint or that other employees merely mimicked CW1's slurs.  Either way, the Court concludes that the EEO complaint provided sufficient notice to permit the agency to investigate the allegations that CW1 made these slurs—and that, perhaps, others repeated her vile insults.  *See Crawford*, 867 F.3d at 109–110 (concluding plaintiff's "enclosure of [a] performance review [and] reference to performance reviews" in complaint were sufficient notice to agency that the review "was of concern and merited scrutiny"); *Daughtry v. kmG Hauling, Inc.*, No. 20-cv-3361, 2021 WL 4078686, at *4 (D.D.C. Sept. 8, 2021) (concluding that "repeated[] reference[]" to plaintiff's pay in her EEOC charge was sufficient notice to the agency that she was raising a discriminatory pay claim).

By contrast, the allegation in paragraph 28 that, "[t]o [d]ate[,] the Agency [has] taken possession of [Yaich's] property and [has] refused to return it to [him]," Dkt. 1 at 6 (Compl. ¶ 28), does not satisfy the notice standard.  Nowhere in his EEO complaint does Plaintiff even hint at a claim that his personal property was taken, much less that this alleged misappropriation was the product of discrimination or retaliation.  *See* Dkt. 13-1 at 6–11.  Thus, unsurprisingly, Plaintiff's response to Defendants' motion to dismiss fails to offer any meaningful counter to Defendants' argument.  *See* Dkt. 13 at 14–15.  "Given the overall silence in the administrative charge documents as to" Yaich's personal property, as well as "the absence of any indication that [he] raised those claims in any other charge or amendment to [his] charge," *Perez v. D.C. Dep't of Emp. Servs.*, 305 F. Supp. 3d 51, 60 (D.D.C. 2018), the Court concludes that Plaintiff failed to exhaust his remedies as to that claim.

The Court will, accordingly, dismiss paragraph 28 of Plaintiff's complaint for failure to exhaust.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' partial motion to dismiss, Dkt. 11, is **GRANTED** as to paragraphs 28 and 29 of the complaint and **GRANTED** as to Plaintiff's disparate treatment claims set forth in paragraphs 1 through 16.  It is further **ORDERED** that Defendants' partial motion to dismiss is **DENIED** altogether as to paragraphs 17, 18, and 19, and **DENIED** as to Plaintiff's hostile work environment claim set forth in paragraphs 1 through 16.[3]

> **SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  August 5, 2022

---

[3] Defendants do not move to dismiss paragraphs 20 to 26 of Plaintiff's complaint, Dkt. 11 at 1, and the Court therefore does not address those paragraphs at this time.